# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Decided November 29, 2005
Reissued January 18, 2006

No. 04-1211

COMMONWEALTH OF PENNSYLVANIA,
DEPARTMENT OF ENVIRONMENTAL PROTECTION AND
STATE OF DELAWARE,
PETITIONERS

v.

ENVIRONMENTAL PROTECTION AGENCY,
RESPONDENT

AMERICAN LUNG ASSOCIATION, ET AL.,
INTERVENORS

———

On Petition for Review of an Order of the
Environmental Protection Agency

———

*Richard P. Mather, Sr., Kristen M. Campfield*, Commonwealth of Pennsylvania, Department of Environmental Protection, *M. Jane Brady*, Attorney General, Attorney General's Office of the State of Delaware, and *Valerie S. Csizmadia*, Deputy Attorney General, were on the briefs for petitioners.

*Kelly A. Johnson*, Acting Assistant Attorney General, U.S.

Department of Justice, *John C. Cruden*, Deputy Assistant Attorney General, *Lily N. Chinn*, and *Jan Tierney*, U.S. Environmental Protection Agency, were on the brief for respondent. *Eric G. Hostetler*, U.S. Department of Justice, entered an appearance.

Before: TATEL and BROWN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.[*]

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Pennsylvania and Delaware each challenges Environmental Protection Agency boundaries for areas not in compliance with Clean Air Act ozone pollution standards. Finding EPA's boundaries neither arbitrary nor capricious, we deny the petitions for review.

**I.**

Title I of the Clean Air Act (CAA) charges EPA with formulating National Ambient Air Quality Standards (NAAQS). 42 U.S.C. §§ 7408-09. NAAQS set maximum permissible concentrations of certain specified pollutants in the ambient air. *Id*. In 1997, EPA established an 8-hour standard for ozone that required areas to stay below 0.08 parts per million of ozone concentration averaged over 8 hours. 40 C.F.R. § 50.10.

According to CAA procedures, once EPA promulgates a NAAQS, each State must submit proposed designations for all areas within its borders. States designate areas as "attainment" or "nonattainment" depending on the level of compliance or, absent adequate information, as "unclassifiable." 42 U.S.C. § 7407(d)(1). After receiving state recommendations, EPA

---

[*]Senior Circuit Judge Edwards was in regular active service at the time of oral argument.

promulgates final designations. The statute grants EPA the following authority to modify state suggestions:

> [T]he Administrator may make such modifications as the Administrator deems necessary to the designations of the areas (or portions thereof) submitted [by the States] (including to the boundaries of such areas or portions thereof). Whenever the Administrator intends to make a modification, the Administrator shall notify the State and provide such State with an opportunity to demonstrate why any proposed modification is inappropriate.

42 U.S.C. § 7407(d)(1)(B)(ii).

The CAA establishes either the Metropolitan Statistical Area (MSA) or the Consolidated Metropolitan Statistical Area (C/MSA) as the presumptive boundary for nonattainment areas classified as serious, severe, or extreme. 42 U.S.C. § 7407(d)(4)(A)(iv). The CAA is silent, however, with respect to boundary setting for areas designated as "moderate"—such as the areas at issue in this case. *See* Air Quality Designations and Classifications for the 8-Hour Ozone National Ambient Air Quality Standards; Early Action Compact Areas with Deferred Effective Dates, 69 Fed. Reg. 23,858, 23,909 (Apr. 30, 2004) (to be codified at 40 C.F.R. pt. 81) ("Designation Rule") (designating Cecil County, Maryland as "moderate"); *id.* at 23,921 (designating Ocean County, New Jersey as "moderate"). As a result, EPA promulgated a policy to guide States through the designation process for all areas within their boundaries. *See* 8-Hour Ozone NAAQS Guidance on Nonattainment Designations (Mar. 28, 2000) ("Designation Guidance"). Mirroring the CAA, the Designation Guidance sets the MSA or C/MSA as the presumptive boundary for all nonattainment areas regardless of the severity of their nonattainment status. *Id.* at 3.

For areas designated nonattainment for the 1-hour ozone standard (the standard in place before the 8-hour NAAQS), the Designation Guidance sets the larger of the C/MSA or the 1-hour nonattainment area as the presumptive boundary. *Id*. at 6. Under the Designation Guidance, States wishing to modify presumptive boundaries must undertake a detailed analysis of eleven specified factors—including population density, location of emission sources, traffic and commuting patterns, meteorology, and geography. *See id*. at 4 (listing the eleven factors); *see also* 42 U.S.C. § 7407(d)(4)(A)(v) (enumerating six similar factors the Administrator should consider when asked to amend the presumptive boundaries for serious, severe, and extreme areas).

This case concerns EPA's placement of two counties: Ocean County, New Jersey and Cecil County, Maryland. Ocean County is in the New York-Northern New Jersey-Long Island 1-hour nonattainment area, its presumptive location for the 8-hour NAAQS. *See* Letter from Jane M. Kenny, Regional Administrator, EPA Region II, to James E. McGreevey, Governor of New Jersey (Dec. 3, 2003); *see also* Designation Guidance 6 (designating 1-hour nonattainment area boundaries as presumptive locations for nonattaining counties). Cecil County is in the Philadelphia-Wilmington-Atlantic City nonattainment area, its presumptive location. *See* Letter from Donald D. Welsh, Regional Administrator, EPA Region III, to Robert L. Ehrlich Jr., Governor, State of Maryland (Dec. 3, 2003); *see also* Designation Guidance 6. In a letter to EPA, New Jersey asked the Agency to transfer Ocean County to the Philadelphia nonattainment area and Cecil County to the Baltimore-Washington-Northern Virginia nonattainment area. According to New Jersey, because Ocean County lies downwind from Philadelphia, the Philadelphia nonattainment area affects that county's air quality far more than does the New York nonattainment area. Similarly, New Jersey argued that because

Cecil County lies downwind of Baltimore, the Baltimore nonattainment area affects that county's air quality more than does the Philadelphia nonattainment area. *Id*. Connecticut and New York supported New Jersey's request. Maryland disagreed, recommending that Cecil County remain in the Philadelphia area. Pennsylvania said nothing about Cecil County's placement, but recommended that Ocean County remain in the New York area, arguing that Ocean County emissions affect New York's air quality more than Philadelphia's. Taking an entirely different approach, Delaware urged EPA to create one regional nonattainment area spanning from Northern Virginia to Maine. No State submitted the required eleven-factor analysis.

EPA declined to transfer either county, citing Ocean County's location within the New York nonattainment area and Maryland's recommendation that Cecil County remain in the Philadelphia nonattainment area. In follow-up letters to EPA, New Jersey, New York, Connecticut, Delaware, and Pennsylvania each reiterated their recommendations and supplied additional information. Only New Jersey submitted the required eleven-factor analysis, but only in support of its recommendation to transfer Ocean County to the Philadelphia nonattainment area. Maryland, which supported keeping Cecil County in its presumptive location, filed no new information.

In a Federal Register announcement issued on April 30, 2004, EPA designated and established the geographic boundaries for attainment, nonattainment, or unclassifiable areas throughout the nation. *See* Designation Rule, 69 Fed. Reg. at 23,877-23,951. The final rule included both Ocean and Cecil counties in the Philadelphia nonattainment area. *Id*. at 23,921, 23,909. In other words, EPA moved Ocean County from its presumptive location in the New York area to the Philadelphia area (as New Jersey had requested), but left Cecil County in its

presumptive location in the Philadelphia area (as Maryland had requested).

Petitioners, Pennsylvania's Department of Environmental Protection and Delaware, challenge EPA's Designation Rule, arguing that the Agency's inconsistent consideration of downwind effects renders the Ocean and Cecil County designations arbitrary and capricious. In addition, Delaware reiterates its view that EPA should have established a much larger nonattainment area encompassing the entire northeast corridor. In reviewing these claims, we set aside EPA's air quality designations only if we find them "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this standard, we will not substitute our judgment for the agency's, especially where the challenged decision implicates substantial agency expertise. *Huls America Inc. v. Browner*, 83 F.3d 445, 452 (D.C. Cir. 1996); *see also Appalachian Power Co. v. EPA*, 135 F.3d 791, 801-02 (D.C. Cir. 1998) ("Our analysis is guided by the deference traditionally given to agency expertise, particularly when dealing with a statutory scheme as unwieldy and science-driven as the Clean Air Act.").

## II.

We begin with EPA's decision to place both Ocean and Cecil counties in the Philadelphia nonattainment area. According to Pennsylvania and Delaware, these placements are contradictory. Although both areas are affected by downwind pollution (Ocean County by Philadelphia and Cecil County by Baltimore), EPA assigned Ocean County on the basis of its vulnerability to Philadelphia's downwind pollution, but left Cecil County in its presumptive Philadelphia location notwithstanding Baltimore's downwind effects. The two States also contend that EPA simply deferred to Maryland's recommendation that Cecil County remain in its presumptive

location, thus abdicating its statutory responsibility to make final nonattainment decisions.

EPA defends its action on two grounds. First, relying on the primary emphasis it gives to "the recommendations made by States for the areas within their borders," Resp't's Br. 13, it points out that New Jersey supported transferring Ocean County to the Philadelphia nonattainment area while Maryland opposed transferring Cecil County to Baltimore. As EPA observes, the CAA gives great deference to governors' recommendations for areas within their states, providing only that EPA "*may*" make any modifications it "deems necessary." 42 U.S.C. § 7407(d)(1)(B)(ii) (emphasis added). Second, EPA relies on New Jersey's eleven-factor analysis, which provides evidence, supported by EPA's own modeling of wind trajectories, that "New York state contributes very little to Ocean County's ozone violations, particularly when compared to Pennsylvania." Resp't's Br. 16. As to Cecil County, EPA points out that contrary to its Designation Guidance, no State submitted an eleven-factor analysis supporting the county's transfer to the Baltimore area.

Given our highly deferential standard of review, we see no basis for upsetting EPA's designations. In the Designation Guidance—which neither Pennsylvania nor Delaware challenges—EPA says quite clearly it will exercise its discretion to modify home state recommendations only when it receives evidence on eleven relevant factors which, together with data collected by the Agency, demonstrate that the presumptive boundary—the 1-hour nonattainment area in this case—is inappropriate. *See* Designation Guidance 4, 6. In assigning Ocean and Cecil counties to the Philadelphia nonattainment area, EPA adhered to this policy. As to Cecil County, since no one provided an eleven-factor analysis to overcome the county's presumptive placement, EPA deferred to the home state

(Maryland) recommendation, and placed the county within the Philadelphia nonattainment area. As to Ocean County, not only did the home state (New Jersey) recommend placing the county in the Philadelphia nonattainment area rather than the New York area, but the State provided a supporting eleven-factor analysis.

To be sure, the two placement decisions appear inconsistent with respect to EPA's consideration of downwind effects. Under EPA's own standards, however, the decisions are perfectly consistent: In both cases, EPA deferred to home state recommendations and adhered to the Designation Guidance requirement that those seeking to amend presumptive boundaries must submit an eleven-factor analysis. We will therefore deny the petitions for review on this issue.

## III.

This brings us to Delaware's challenge to EPA's placement of nonattaining counties in locally based C/MSAs or 1-hour nonattainment areas rather than in the "broader, contiguous, interstate nonattainment area" proposed by Delaware. Pet'rs' Br. 32. Citing "undisputed evidence that ground level ozone is a regional problem in the Mid-Atlantic, with transport being a significant issue of concern," Delaware argues that EPA has impaired CAA goals by refusing to create one large nonattainment area consisting of all States whose contributions to pollutants affect each other's ability to reach attainment. *Id*. at 28.

The CAA refers to the designation of nonattaining counties and "nearby area[s]" that contribute to exceedances. 42 U.S.C. § 7407(d)(1)(A)(i). EPA interprets "nearby" to require locally-based nonattainment areas, explaining that "Congress has established a different mechanism to deal with . . . [the] long-range ozone transport problem." Resp't's Br. 27. Offering a different interpretation of the CAA, Delaware contends that

since all counties from Virginia to Maine are nonattainment areas, all are "nearby" and that nothing in the statute prevents placing them in one contiguous area. While this construction of "nearby" may well be sensible, *Chevron* requires that we defer to the agency's reasonable interpretation of the term, and Delaware has given us no reason to think that EPA's interpretation is unreasonable. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843 (1984) ("[I]f the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.").

Defending its failure to produce an eleven-factor analysis, Delaware argues that "in practice" the Designation Guidance promotes smaller nonattainment areas, "exactly the opposite of what Delaware believes should be done under the CAA." Reply Br. 10. But Delaware has offered no evidence that "in practice" EPA will not enlarge a nonattainment area in response to an eleven-factor analysis. Indeed, in this case EPA did just that: Responding to New Jersey's eleven-factor analysis, it enlarged the Philadelphia area to include Ocean County.

In sum, given EPA's broad discretion under the CAA to determine when to modify state proposals, and given Delaware's failure either to produce the eleven-factor analysis or to challenge the Designation Guidance, Delaware has offered us no basis for questioning EPA's rejection of its proposal to establish a broad, interstate nonattainment area.

## IV.

The petitions for review are denied.

*So ordered.*